```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
GENE FISCH, JR.,                         :
                                         :
                    Plaintiff,           :    12 Civ. 2033 (DLC)
                                         :
          -v-                            :    OPINION & ORDER
                                         :
NEW HEIGHTS ACADEMY CHARTER SCHOOL, a    :
corporation; STACY WINITT,               :
individually and as Executive Director   :
of New Heights Academy Charter School;   :
GAIL GROSSMAN, individually and as       :
Board President of New Heights Academy   :
Charter School; JENNIFER DAVIS,          :
individually and as Board Vice           :
President of New Heights Academy         :
Charter School; and JOEL RAMPOLDT,       :
individually and as a Board Member of    :
New Heights Academy Charter School,      :
                                         :
                    Defendants.          :
                                         :
---------------------------------------- X
```

APPEARANCES

For Plaintiff:

Jeremy Heisler
Steven L. Wittels
Andrew Melzer
Sanford, Wittels & Heisler, LLP
1350 Avenue of the Americas, 31st Floor
New York, NY 10019

David W. Sanford
Thomas J. Henderson
Brandon Jamison
Sanford, Wittels & Heisler, LLP
1666 Connecticut Ave., Suite 310
Washington, DC 20009

For Defendants:

Marjorie Kaye Jr.
Samantha Abeysekera
Jackson Lewis LLP
666 Third Ave.
New York, NY 10017

DENISE COTE, District Judge:

Plaintiff Gene Fisch, Jr. ("Fisch") brings this action against defendants New Heights Academy Charter School (the "School"), Stacy Winnitt ("Winnitt"), Gail Grossmann ("Grossmann"), Jennifer Davis ("Davis"), and Joel Rampoldt ("Rampoltd") pursuant to the whistleblower provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), and New York State law.  The defendants have moved to dismiss Fisch's complaint (the "Complaint") in part, pursuant to Rule 12(b)(6), Fed. R. Civ. P.  For the following reasons, the motion is granted in part.

BACKGROUND

The following facts are drawn from the complaint and are presumed to be true for purposes of this motion.  The School is a charter school in New York City.  It submits requests for and receives federal funding to support its operations.  Fisch alleges that under the relevant federal regulations, the School is required to use proper fiscal control and fund accounting

procedures to ensure that expenditures reimbursed by federal funds are authorized in advance, are made for eligible expenditures only, and are actually reported.  See 34 C.F.R. Part 80.  In order to justify receipt of funds and avoid having to repay them, Fisch claims, the School is required to account for its expenditures accurately and fully.  See id. at §§ 80.20, 80.21.

Winnitt, Grossmann, Davis, and Rampoltd (collectively, the "Individual Defendants") are members of the School's Board of Trustees (the "Board").  Winnitt is the School's Executive Director.

In July 2008, Fisch was hired to serve as the School's Chief Operating Officer ("COO") in order to help the School handle its finances.  At this time, the School had stated policies on "Separation" and "Code of Ethics and Conduct," as well as a "Whistleblower Policy."  Fisch alleges that these policies and other School policies were incorporated into his employment contract.  When Fisch began his employment, the School was in the process of providing information to an outside firm for an annual independent audit.  Once completed, the results of that audit would serve as the School's statement to the federal government justifying its receipt of federal funds.

Upon becoming COO, Fisch conducted his own internal audit of the School's finances.  He soon uncovered a number of

financial accounting improprieties.  Specifically, he discovered that the School had not required the regular use of purchase orders prepared and approved in advance, had not reviewed and separately approved invoices before payments were made, and had falsified, forged, and backdated certain approved purchase orders and invoices at the direction of Winnitt.  Fisch also discovered that approximately $250,000 in invoices, many of them past due, had not been paid by the School, and that Winnitt had directed that a demolition take place in relation to a construction project at the School without the requisite permits and authorizations.

In July 2008, Fisch reported these financial improprieties to Winnitt, Grossmann, Rampoltd, and other members of the Board, and argued that the improper practices should be halted and corrected.  Winnitt responded that the School was "too small to get caught."  Fisch also reported his concerns at a meeting of the Board's Finance Committee.

In August and September, Fisch again spoke with Winnitt about the School's improper financial and unauthorized construction practices, and stated his intention to follow up with the Finance Committee.  Winnitt responded with hostility. She told Fisch not to worry about the past and repeated her belief that the School was "too small to get caught."  She also instructed Fisch not to speak with the Finance Committee about

any improprieties and to clear any communications with the Finance Committee with her.  She informed him that she would sit in on all his conference calls with the Finance Committee in the future, and threatened his employment.

In September, Fisch informed the Board and the Finance Committee that the School's accounting for federal funds from 2007-08 was inaccurate, that the numbers used for the 2008 audit were not credible, and that he did not want to sign off on the audit without redoing the numbers.  That same month, he told Grossmann and Ramboldt that he believed the School was misappropriating funds, that "someone could go to jail," that he had seen a lawyer about the School's practices, and that Winnitt was retaliating against him for investigating and reporting these issues.  Fisch again expressed his concerns to Winnitt in October, and she again brushed them aside.  She instructed him never again to discuss his concerns with the Board and to remove references to improper accounting practices from his Finance and Operations Report to the Board.

The 2008 audit by the outside firm was produced in October.  It found a number of deficiencies in the School's fiscal control and accounting practices, which supported many of Fisch's findings.  The deficiencies included a lack of approval signatures on purchase orders and invoices, and the School's inability to locate certain purchase invoices.

5

Fisch continued to voice his concerns about the School's financial practices from October to December.  He received a negative mid-year performance review from Winnitt on December 29.  Winnitt said that she would provide Fisch with an improvement plan for him to follow, but failed to do so.

From January through March 2009, Fisch prepared a synopsis of the 2008 audit findings.  During this period, he informed Winnitt of his discomfort with the figures in the audit and with submitting those figures to the federal government.  Nevertheless, the audit was submitted to the federal government with Winnitt's signature.  Fisch alleges that this submission, along with the submission of other statements regarding amounts to be paid or reimbursed to the School with federal funds, violated the FCA, 31 U.S.C. § 3729(a)(1).

In mid-March, after Fisch informed the Finance Committee that expenditures did not match grant budgets, Winnitt became angry with him.  On March 18, the Board's treasurer agreed with Fisch regarding certain of the School's financial improprieties and indicated that he would raise the matter with the Board.  On March 20, 2009, Winnitt terminated Fisch's employment in retaliation for his investigation and reports, stating that he was "not a good fit" at the School.  Fisch's last day at work was May 15 and his last day on payroll was May 31.

Fisch filed the Complaint on March 19, 2012, alleging claims against the School and the Individual Defendants for violations of the whistleblower provisions of the FCA, 31 U.S.C. § 3730(h), and for breach of his employment contract with the School.  On May 15, the defendants moved to dismiss the FCA claims against all defendants and the breach of contract claims against the Individual Defendants only.  The motion to dismiss was fully submitted on July 10.

DISCUSSION

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  LaFaro v. New York Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (citation omitted).  The court is "not bound to accept as true legal conclusions couched as factual allegations."  Id. at 1950-51.

Applying this plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950. There must be a "reasonably founded hope that the discovery process will reveal

relevant evidence." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (citation omitted). "Plausibility thus depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011).

I. FCA Claims

The FCA "authorizes private citizens to sue on behalf of the United States to recover treble damages from those who knowingly make false claims for money or property upon the Government or who knowingly submit false statements in support of such claims or to avoid the payment of money or property to the Government." U.S. ex rel. Lissack v. Sakura Global Capital Mkts., Inc., 377 F.3d 145, 146 (2d Cir. 2004). The wrongful activity must be linked "to the government's decision to pay" a claim. Mikes v. Straus, 274 F.3d 687, 696 (2d Cir. 2001).

The Complaint alleges violations of the FCA's whistleblower provision, 31 U.S.C. § 3730(h) ("Section 3730(h)"), which, at the time of the events at issue in the Complaint, provided as follows:

> Any employee who is discharged . . . by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of

8

> an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.  Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

31 U.S.C. § 3730(h) (subsequently amended in 2009).

In order to sustain an action under 31 U.S.C. § 3730(h), Fisch must prove that: 1) he engaged in conduct protected under the statute; 2) his employer knew that he was engaged in such conduct; and 3) he was terminated in retaliation for the protected conduct.  See, e.g., Mendiondo v. Centinela Hosp. Med. Center, 521 F.3d 1097, 1104 (9th Cir. 2008).  Fisch has adequately pled each of the above elements with respect to the School.  He has not done so with respect to the Individual Defendants, however, because they do not qualify as "employers" within the meaning of the statute.

A.   The Individual Defendants' Liability

The Individual Defendants, which consist of the School's Executive Director and other members of the Board, cannot be liable under Section 3730(h) because they do not qualify as employers for purposes of the statute.  Section 3730(h) imposes liability only on employers.  See, e.g., U.S. ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc., 322 F.3d 738, 740 (D.C. Cir. 2003).

Because the FCA does not define the term "employer," it is given its ordinary common law meaning.  See United States v. Texas, 507 U.S. 529, 534 (1993).  Accordingly, it is the corporation only, not its officers, that is the employer of the corporation's employees.  See Meyer v. Holley, 537 U.S. 280, 286 (2003); cf. Tomka v. Seiler Corp., 66 F.3d 1295, 1313-17 (2d Cir. 1995) (holding that the word "employer" does not cover a supervisor in his personal capacity for cases arising under Title VII).  The motion to dismiss thus successfully disposes of Fisch's FCA whistleblower claims against the Individual Defendants.

Fisch points to a handful of out-of-Circuit cases in which district courts allowed Section 3730(h) claims to go forward against individual defendants.  In light of the clear language of the statute, however, this Court joins the overwhelming balance of authority holding otherwise.  See, e.g., Yesudian ex rel. U.S. v. Howard Univ., 270 F.3d 969, 972 (D.C. Cir. 2001) ("Section 3730(h) plainly mentions only the 'employer' as incurring liability, and the word 'employer' does not normally apply to a supervisor in his individual capacity.").

Fisch notes that Congress amended Section 3730(h) on May 20, 2009 to exclude the word "employer," see Pub. L. 111-21, § 4(f)(1), (2), effective May 20, 2009, and that at least one court in this Circuit has held that this amendment allows for

10

FCA retaliation claims against individual defendants.  See <u>U.S. ex rel. Moore v. Cmty. Health Servs., Inc.</u>, 3:09 CV 1127 (JBA), 2012 WL 1069474, at *9 (D. Conn. Mar. 29, 2012).  Fisch urges this Court to hold the same.  Fisch concedes, however, that the 2009 amendments to Section 3730(h) do not apply retroactively.  <u>See</u> <u>id.</u>  Fisch was terminated on March 20, 2009 and his last day at work for the School was May 15, 2009.  He does not allege that the defendants engaged in any form of retaliatory conduct after May 20, 2009 that might give rise to liability under Section 3730(h).  Thus, even if the 2009 amendments to the FCA had the requisite effect on individual liability, they have no impact on the individual liability of <u>these</u> defendants.

    B.    Protected Conduct

In order for an employee's actions to constitute "protected conduct" under Section 3730(h), they must have been "in furtherance of an action under the FCA."  <u>Garcia v. Aspira of New York, Inc.</u>, 07 Civ. 5600 (PKC), 2011 WL 1458155, at *4 (S.D.N.Y. Apr. 13, 2011) (citation omitted).  In other words, the employee "must have been investigating matters that were calculated, or reasonably could lead, to a viable FCA action." <u>Shekoyan v. Sibley Int'l</u>, 409 F.3d 414, 423 (D.C. Cir. 2005) (citation omitted).  Although it is not necessary for the plaintiff actually to file a <u>qui tam</u> lawsuit, or even "to know that the investigation could lead to" such a suit, <u>id.</u> (citation

omitted), mere investigation of an employer's non-compliance with federal regulations is not enough. See Faldetta v. Lockheed Martin Corp., 98 Civ. 2614 (RCC), 2000 WL 1682759, at *12 (S.D.N.Y. Nov. 9, 2000). The plaintiff's investigation must be "directed at exposing a fraud upon the government." Moor-Jankowski v. Bd. Of Trustees of New York Univ., 96 Civ. 5997 (JFK), 1998 WL 474084, at *10 (S.D.N.Y. Aug. 10, 1998) (citation omitted).

The allegations in the Complaint more than meet this standard. Fisch claims that he investigated a variety of financial improprieties in connection with the School's submission of the 2008 audit and other statements regarding amounts to be paid or reimbursed to the School with federal funds. He alleges that he uncovered widespread accounting irregularities, including the School's failure to use purchase orders prepared and approved in advance, its failure to review and separately approve invoices before making payments, and its falsification, forgery, and backdating of certain approved purchase orders and invoices at the direction of Winnitt.

Drawing all inferences in Fisch's favor, he plausibly alleges that he gathered facts and information about defendant's conduct that reasonably could have led to a viable FCA action, and that his actions were directed at exposing fraud upon the government. Fisch's activities went beyond mere investigation

12

of his employer's failure to comply with federal regulations. He informed members of the Board that "someone could go to jail" if the relevant financial information was submitted to the government, and went so far as to tell Board members that he had consulted with an attorney. Although Fisch did not actually file a qui tam action against the School, the Complaint alleges violations of accounting and fiscal control regulations intimately associated with the payment of federal grants. See 34 C.F.R. §§ 80.20, 80.21. And it alleges that these violations included fraudulent submissions, including intentionally falsified, forged, and backdated approved purchase orders and invoices.

The defendants argue that Fisch's actions do not constitute "protected conduct" because, in investigating the School's finances and audit procedures, he was simply acting in his capacity as COO. They note that the Complaint states that Fisch was hired "to help the School handle its finances," and that "sign[ing] off" on the audit was one of his job responsibilities. They further note that the Complaint does not cite any discrete false statements submitted to the government for payment or reimbursement, or allege that the School's purchase orders and invoices did not correspond to actual School expenditures. The sum total of the allegations in the Complaint, defendants argue, amount to a claim that Fisch

13

investigated the School's failure to abide by the relevant accounting regulations.

These arguments misconstrue the standard for pleading a Section 3730(h) violation and the nature of the allegations in the Complaint.  To state a viable claim under Section 3730(h), the plaintiff need not plead his fraud allegations with particularity.  See Mendiondo, 521 F.3d at 1103.  It is necessary only that he be "investigating matters that were calculated, or reasonably could lead, to a viable FCA action." Shekoyan, 409 F.3d at 423 (citation omitted).  The investigation of large-scale financial irregularities and accounting failures addressed in the Complaint, which were allegedly included in submissions filed with the federal government to justify payment or reimbursement of federal funds, more than meet this standard.

C.   Notice

To satisfy the second element of an FCA retaliation claim, Fisch must adequately plead that the School knew he was engaged in protected conduct.  "Absent such notice, then a fortiori, [the School's] actions could not constitute retaliation." Faldetta, 2000 WL 1682759, at *13 (citation omitted). Naturally, an employee who simply engages in behavior wholly consistent with his job description will not, without more, provide notice that he is acting "in furtherance" of an FCA action.  See Eberhardt v. Integrated Design & Const., Inc., 167

14

F.3d 861, 868-69 (4th Cir. 1999).  Accordingly, an employee assigned the task of investigating fraud within a company must go beyond the assigned task and put his employer on notice that an FCA action is "a reasonable possibility."  Id. at 869.

Fisch has satisfied this element.  He alleges not only that he helped the School handle its finances and prepare its 2008 audit and other submissions in accordance with his job responsibilities as COO, but also that he warned the members of the Board of possible legal consequences of the financial improprieties he uncovered.  Fisch told Board members that "someone could go to jail" as a result of the School's improper accounting practices, and that he had consulted with an attorney.  Fisch further alleges that Winnitt explicitly acknowledged that the School's actions were improper or illegal by stating that the School was "too small to get caught."  Irrespective of the nature or scope of Fisch's assigned job responsibilities, a reasonable factfinder could conclude that the School was on notice of a potential FCA action.  "[C]haracterizing the employer's conduct as illegal . . . or recommending that legal counsel become involved" is sufficient to provide notice to an employer of a potential qui tam lawsuit, even if these statements come from an employee "tasked with the internal investigation of fraud against the government."  Id. at 868.

15

D.  Retaliation

Fisch has adequately pled facts that, if proven, would permit a jury to conclude that his employment was terminated in retaliation for his protected conduct.  Fisch claims that he was fired mere days after Winnitt became angry with him for informing members of the Finance Committee that expenditures did not match grant budgets.  The Complaint describes a pattern of retaliatory behavior by Winnitt that culminated in Fisch's firing: Winnitt initially resisted Fisch's efforts to investigate financial and accounting practices at the School, then she limited his authority to speak independently with the Board and the Finance Committee and threatened his employment.  Next, she punished him through a poor performance review, and finally she fired him.  These allegations are sufficient to allow Fisch's claim to go forward.

II.  Breach of Contract Claims

Fisch alleges that the defendants breached his contract with the School by, inter alia, violating the School's stated policies on "Separation" and "Code of Ethics and Conduct," and its "Whistleblower Policy."  The defendants seek dismissal of the breach of contract claims against the Individual Defendants only.  The parties do not argue that any law other than New York law applies.  "[W]here the parties agree that New York law controls, this is sufficient to establish choice of law."

Federal Ins. Co. v. American Home Assurance Co., 639 F.3d 557, 566 (2d Cir. 2011).

To state a claim for breach of contract under New York law, "a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (citation omitted). It is black letter law, however, that generally "one who is not a party to a contract cannot be held liable for a breach of that contract." Underdog Trucking, LLC, Reggie Anders v. Verizon Servs. Corp., 09 Civ. 8918 (DLC), 2010 WL 2900048, at *3 (S.D.N.Y. July 20, 2010). It is undisputed that the Individual Defendants did not enter into a contract with Fisch in their individual capacities. Accordingly, the breach of contract claims against them must be dismissed.

Fisch argues that the Individual Defendants may be held individually liable for aiding and abetting breach of contract, inducing a breach of contract, tortious interference of contract, fraud, and various other torts. Although Fisch did not plead any of these causes of action, he argues that the Court should liberally construe the Complaint to allow these claims to go forward. These arguments are unavailing. The Complaint wholly fails to plead the elements of any of the above

causes of action with respect to any of the Individual Defendants.  It fails to plead fraud with sufficient particularity to survive the pleading requirements of Rule 9(b), Fed. R. Civ. P., or the facts necessary to support individual liability under a theory of piercing the corporate veil.  See De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 69-70 (2d Cir. 1995) (addressing the pleading requirements for piercing the corporate veil under New York law).  And there is no cause of action for aiding and abetting breach of contract under New York law.  See Purvi Enterprises, LLC v. City of New York, 62 A.D.3d 508, 509 (N.Y. App. Div. 2009).

## CONCLUSION

The defendants' May 15, 2012 motion to dismiss is granted as to Fisch's claims against the Individual Defendants, and denied as to Fisch's claim against the School under the whistleblower provisions of the FCA.  This ruling disposes of all claims against the Individual Defendants.  The Clerk of

Court shall remove defendants Winnitt, Grossmann, Davis, and Rampoltd from the case.

SO ORDERED:

Dated:   New York, New York
         September 13, 2012

　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　DENISE COTE
　　　　　　　　　　　　　　United States District Judge